IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JB's Food Mart, et al.,                                        Case No. 3:13 CV 1869

                              Plaintiffs,                      MEMORANDUM OPINION
                                                              AND ORDER

                    -vs-
                                                              JUDGE JACK ZOUHARY
United States of America,

                              Defendant.

## INTRODUCTION

Plaintiffs JB's Food Mart ("JB") and Tannous Touma ("Touma") filed this action alleging the

United States improperly revoked JB's authorization to participate in the Supplemental Nutrition

Assistance Program ("SNAP").  The United States moved for summary judgment, arguing the issue

of procedural due process is moot and Plaintiffs lack the requisite business integrity for SNAP

authorization (Doc. 16).  Plaintiffs responded, contesting the issue of procedural due process only

(Doc. 17).

## BACKGROUND

JB is a Toledo, Ohio convenience store (Doc. 15-1 at 2).  In March 2010, T&M Touma, LLC

("T&M") purchased JB from its prior owner, J.H. Eid & Sons, Inc. ("Eid & Sons") (*id*. at 85–92).

Touma was a 35 percent shareholder in Eid & Sons and the company's treasurer (*id*. at 95–98).

Touma owns T&M (*id.* at 74–78).

Between July 2003 and December 2003, the Ohio Department of Public Safety ("ODPS")

investigated JB for illegal use of, and trafficking in, food stamps (*id*. at 2–5).   During the

investigation, confidential informants exchanged food stamps for ineligible items, including cleaning supplies, clothing, alcohol, music CDs, movie DVDs, fireworks, cell phones, and money orders (*id.* at 2–12).  Touma and Jacques J. Eid ("Eid"), President of Eid & Sons, were arrested on December 11, 2003 (*id.* at 3).  In May 2004, a state court found Touma guilty of attempted illegal use of food stamps (*id.* at 31–32).

### JB's 2004 Disqualification from SNAP

The USDA's Food and Nutrition Service ("FNS") administers SNAP.  On June 24, 2004, FNS sent JB -- then owned by Eid & Sons -- a letter by certified mail detailing ODPS's investigation (*id.* at 6–13).  The letter stated "careful analysis of [JB] Ohio Direction Card/Electronic Benefit Transfer (EBT) transactions . . . disclosed clear and repetitive patterns of Food Stamp Program activity markedly incompatible with legitimate food sales and indicative of trafficking" (*id.* at 9).  FNS explained it would consider disqualifying JB from SNAP participation and described the procedure to qualify for a civil money penalty ("CMP") in lieu of disqualification (*id.* at 10).  The letter invited JB to present any evidence or explanation regarding the charges within ten days  (*id.* at 10–11).

FNS sent JB another letter by certified mail dated July 13, 2004 (*id.* at 14, 17) advising that JB's failure to renew an irrevocable letter of credit, which expired July 7, 2004, meant that its food stamp authorization was terminated effective July 8, 2004 (*id.* at 14).  In other words, the failure to renew disqualified JB from SNAP (*id.*).  The July 13, 2004 letter further explained FNS found JB had committed trafficking violations, subjecting JB to permanent disqualification from SNAP (*id.* at 14–15).  The letter noted JB was not eligible for CMPs in lieu of permanent disqualification because such relief requires that "[f]irm ownership . . . . not (be) [sic] aware of, . . . [] approve [of], . . . [] benefit from, . . . or [] (be) [sic] in any way involved in the conduct or approval of trafficking

violations" (*id.* at 15) (ellipses in original).  Eid participated in, and derived personal benefit from, the trafficking violations, rendering JB ineligible for CMPs (*id.*).

### FNS Denies JB's First Post-Sale Application

On September 24, 2010, shortly after T&M acquired JB, Plaintiffs filed a new application for SNAP authorization (*id.* at 20–25).  FNS sent Plaintiffs a letter denying SNAP authorization via Federal Express on November 17, 2010 and delivered the next day (*id.* at 33–34).  Someone present at the store signed for the letter, as Touma was overseas (*see id.* at 36).  FNS did not notify Plaintiffs' counsel of the SNAP denial, even though Plaintiffs' counsel filed the SNAP application on Plaintiffs' behalf (*id.*).

Touma found the November 2010 denial letter upon his return to the United States.  He then faxed the letter to his counsel on December 16, 2010 (*id.*).  The same day, his counsel mailed a letter to FNS, requesting review of JB's application denial (*id.*).  FNS denied the request as untimely by letter dated December 20, 2010 (*id.* at 41).  Plaintiffs submitted an Appeal Request on December 30, 2010 (*id.* at 48).  The record shows no agency response to that Request (*see* Doc. 17 at 2).

Plaintiffs filed a "second appeal" request on October 26, 2011 (Doc. 15-1 at 55–56).  *See also id.* at 58–59, 61–62, 64–65 (December 5, 2011, January 10, 2012, and January 27, 2012 letters from Plaintiffs' counsel to FNS, all following-up on "second appeal" request).  On January 30, 2012, FNS denied the "second appeal" request as untimely (*id.* at 67).

Touma then sought judicial review of FNS's denial decisions in this Court.  *See JB's Food Mart v. United States,* Case No. 3-12-cv-585-JZ (N.D. Ohio 2012).  In August 2012, this Court dismissed that prior case without prejudice, following a settlement agreement between the parties (Doc. 15-1 at 70).

**FNS Denies JB's Second Post-Sale Application**

Two months later, on October 12, 2012, Plaintiffs filed a second application for SNAP authorization (*id.* at 73–78).  FNS requested additional information on Eid & Sons' sale of JB to T&M (*id.* at 82).  Plaintiffs provided FNS with copies of the Purchase Agreement, Promissory Note, and Touma's food and liquor licenses (*id*. at 85–98).

FNS denied JB's second application for SNAP authorization by letter dated November 6, 2012 (*id.* at 103–04).  FNS found Touma held a shareholder, officer, and/or owner interest in JB at the time of the 2004 violations, subjecting Plaintiffs to permanent denial under 7 C.F.R. § 278 (1)(k) (*id*. at 103).  The letter advised Plaintiffs of the right to request review of  the decision within ten days (*id*.).

Plaintiffs timely requested administrative review in a letter dated November 14, 2012 (*id*. at 107–09).  The letter alleged Touma did not have an ownership interest in JB at the time of the 2004 disqualification (*id*. at 107), but rather only had a 35 percent interest in Eid's liquor permit, not JB itself (*id*. at 107–08).  Plaintiffs further cited Touma's expungement of his 2004 conviction, an attempt to invalidate another ground for FNS' denial:  Touma's personal involvement in the trafficking violations (*id*. at 108).

FNS acknowledged receipt of the request for administrative review, advising Plaintiffs they could supplement the application with additional appropriate information (*id*. at 127).  Plaintiffs did not submit any supplemental information (*id*. at 130).  FNS issued its Final Agency Decision denying SNAP authorization on July 23, 2013 (*id*. at 153–58).  The decision explained there was sufficient evidence to support denial of SNAP authorization, including that Touma had an interest in JB at the time of the 2004 disqualification (*id*. at 153–58).  FNS explained Plaintiffs' right to seek review of the final agency decision (*id*. at 158).  Plaintiffs timely filed this action (*see* Doc. 1).

4

**SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The administrative record supports FNS's conclusions regarding JB's business integrity, and JB does not oppose summary judgment on that ground. *See* Federal Civil Rule 56(e)(3).

**DISCUSSION**

A claim becomes moot when the issues surrounding the claim are no longer live. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Issues are no longer live when "subsequent events make it absolutely clear that the allegedly wrongful behavior cannot be expected to recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cleveland Branch, N.A.A.C.P*, 263 F.3d at 530–31 (internal quotation marks omitted).

Procedural due process requires "notice reasonably calculated . . . to apprise interested parties of the pendency of the action" and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). An initial denial of procedural due process may be cured by

5

subsequent events, such as *de novo* trial.  *See Kim v. United States*, 121 F.3d 1269, 1274–75 (9th Cir. 1997).

Plaintiffs' due process claim focuses on the 2010 denial of SNAP authorization -- in Plaintiffs' words, "Plaintiffs' central challenge is that [FNS] deprived them of due process of law by permanently denying [Plaintiffs'] authority to participate as a retailer in SNAP without proper notice" (Doc. 17 at 4).  Plaintiffs argue the November 2010 denial letter, sent to JB while Touma was abroad, provided constitutionally inadequate notice.  Further, Plaintiffs argue that FNS's failure to respond to repeated letters and phone calls following counsel's receipt of the November 2010 denial letter means "the[] review process was impermissibly inundated with repeated denials of due process which offend accepted constitutional protections" (*id.* at 6).

Even if the November 2010 denial letter provided constitutionally inadequate notice, subsequent events moot Plaintiffs' procedural due process claim.  This is so because when FNS considered the subsequent October 2012 application for SNAP authorization, Plaintiffs received precisely what they claim was denied them by the manner in which FNS sent the November 2010 denial letter -- a substantive FNS decision regarding whether, in light of JB's "new" ownership, JB could again participate in SNAP.  That substantive decision was then followed by administrative review.

Plaintiffs do not argue that any aspect of the second review process was procedurally inadequate.  Nor do they challenge the substance of the decision to deny JB's second SNAP application.  FNS's decision is supported by evidence in the record, which shows Touma both personally committed food stamp trafficking offenses and had an earlier ownership interest in JB when it committed trafficking offenses (*see* Doc. 15-1 at 2–4, 6–12, 31–32, 71–72, 94–98).

## CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment (Doc. 16) is granted.

IT IS SO ORDERED.

> _s/ Jack Zouhary_
> JACK ZOUHARY
> U. S. DISTRICT JUDGE
>
> April 16, 2014